**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**WILLIAM MCGHEE,**

        **Plaintiff,**

**v.**                                 **CIV-07-0609 BB/LAM**

**PAULA BIAMONT, et al.,**

        **Defendants.**

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

**THIS MATTER** is before the Court on Defendants' *Motion for Summary Judgment* (*Doc. 26*), filed on January 18, 2008. Plaintiff filed a response in opposition to the motion (*Doc. 31*) on February 20, 2008. Defendants have not filed a timely reply in support of the motion which constitutes consent that briefing on the motion is complete pursuant to D.N.M.LR-Civ. 7.1(b). Having considered the motion, Plaintiff's response to the motion, Defendants' Martinez Report (*Doc. 25*),[2] Plaintiff's response to the Martinez Report (*Doc. 30*), the record in this case and relevant law, the undersigned recommends that the motion be **GRANTED IN PART** and **DENIED IN PART**, for the reasons set forth below.

---

[1]**Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the Clerk of the United States District Court within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within ten (10) days after being served with a copy of the objections.**

[2]The Court ordered a Martinez Report to allow the state prison administration to develop the factual record at an early stage in this proceeding. *See Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir.1978) (authorizing such reports).

*Procedural Background*

Plaintiff is an inmate who is proceeding *pro se* and *in forma pauperis*.  In his amended complaint (*Docs. 5 and 6*), Plaintiff names the New Mexico Corrections Department (hereinafter, "NMCD") and a number of corrections officials as Defendants.  Plaintiff alleges that corrections officials accused him of damaging a law book from the prison library and charged him with misconduct; that a disciplinary hearing on the misconduct charge was scheduled, but never held; that the misconduct charge was dropped; and that Defendants illegally debited $78.00 from Plaintiff's prison account, without a hearing, to pay for the damage to the law book.[3]  Plaintiff alleges that he did not damage the law book and that the book was already damaged when it was checked out to him.[4]  Plaintiff alleges that he was never given a hearing on the misconduct charge or the debit of $78.00 from his account, and that his prison grievance and appeal regarding this matter were denied.[5]  Plaintiff alleges that Southern New Mexico Correctional Facility (hereinafter, "SNMCF"), where the $78.00 was debited from his account, had a policy and custom of taking money from prisoners' accounts without a hearing.[6]  Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants' actions violated his federal constitutional rights to due process and equal protection under the Fourteenth Amendment.[7]  Additionally, Plaintiff alleges that Defendants' actions violated his state constitutional rights and state tort law.[8]  In his amended complaint, Plaintiff seeks

---

[3]*See* **Amended Civil Complaint** (*Doc. 5*); **Annexation to Amended Civil Complaint** (*Doc. 6*).

[4]*See* **Amended Civil Complaint** (*Doc. 5*) at ¶ 19.

[5]*Id.* at ¶¶ 27-30.

[6]*Id.* at ¶ 2.

[7]*See* **Amended Civil Complaint** (*Doc. 5*); **Annexation to Amended Civil Complaint** (*Doc. 6*).

[8]*Id.*

2

declaratory and injunctive relief, compensatory and punitive damages, costs, attorney's fees (although Plaintiff appears *pro se*) and "[a]ny additional relief the court deems just, proper and equitable."[9]

A number of Plaintiff's claims have been dismissed from this case and NMCD has been dismissed as a party.[10] Plaintiff's remaining claims are: (1) his § 1983 due process claims against Defendant Biamont; and (2) his state law claims against Defendants Biamont, Luna, Ulibarri, Burkhart, Romero and Sedillo. Plaintiff sues Defendant Luna in her individual capacity, and Defendants Biamont, Ulibarri, Burkhart, Romero and Sedillo in their individual and official capacities.[11] Because Plaintiff appears in this case *pro se*, the Court construes his pleadings and submissions liberally, holding them to a less stringent standard than is required of a party represented by counsel. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n. 3 (10th Cir. 1991), citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

---

[9]*See Amended Civil Complaint* (*Doc. 5*) at ¶¶ 6, 59.

[10]Plaintiff's claims that have been dismissed from this case are: (1) all of his claims against NMCD, which was dismissed as a party to this case; (2) his § 1983 due process and equal protection claims against Defendants Luna, Ulibarri, Burkhart, Romero and Sedillo; and (3) his § 1983 equal protection claim against Defendant Biamont. *See **Memorandum Opinion and Order** (Doc. 9) at 4.* Additionally, the Court denied Plaintiff's request for a temporary restraining order and a preliminary injunction, and his request to have this case assigned to a three-judge panel, in its ***Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 29)*** (*Doc. 32*).

[11]*See Amended Civil Complaint* (*Doc. 5*) at ¶¶ 10, 12-16.

### *Summary Judgment Standards*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  If the moving party meets its initial burden, the burden shifts to the nonmoving party to demonstrate that there are genuine issues for trial.  *See Celotex Corp v. Catrett*, 477 U.S. 317, 323-25 (1986).  The nonmoving party cannot simply show that one or more facts are disputed; the dispute must be "genuine" and involve "material" facts.  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 982 (10th Cir. 2003).

Material facts are "facts that might affect the outcome of the suit under the governing law" and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes about material facts are "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  As the Tenth Circuit Court of Appeals has explained: "To be a 'genuine' factual dispute, there must be more than a mere scintilla of evidence . . . . Summary judgment may be granted if the evidence [presented in opposition to summary judgment] is merely colorable or is not significantly probative." *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*) (citation omitted).  Additionally, the nonmovant's evidence must be based on personal knowledge and set forth facts that would be admissible evidence; conclusions do not defeat summary judgment. *See Hall v. Bellmon*, 935 F.2d at 1111.  Similarly, speculation, conjecture or surmise should not prevent summary judgment. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998); *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1170 (10th Cir. 1998) (quoting *Doan v. Seagate Technology, Inc.*, 82 F.3d 974, 977 (10th Cir. 1996), in the context of summary judgment, for the proposition that "[s]peculation . . . will not suffice for evidence.").

Where, as here, the Court has ordered a Martinez report, the "Martinez report is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d at 1111. In this case, the Court gave notice to the parties, when it ordered a Martinez report, that the Martinez report could be used in deciding whether to grant summary judgment on Plaintiff's claims, whether by motion or sua sponte.[12]

### *Analysis*

In their motion for summary judgment (*Doc. 26*), Defendants ask the Court to enter summary judgment in their favor, and dismiss all of Plaintiff's remaining claims with prejudice, on grounds of mootness. Defendants argue that all of Plaintiff's remaining claims are moot because NMCD has returned to Plaintiff's prison account the $78.00 that was debited from the account to pay for the damaged law book. Additionally, Defendants contend that Plaintiff had access to his prison account during the time period at issue in this case.

Plaintiff opposes the grant of summary judgment. Plaintiff argues that Defendants have not met their burden of showing that there is an absence of evidence to support his claims and Plaintiff contends that there are multiple genuine issues of material fact to be resolved related to his claims.[13]

---

[12]*See **Order to File a Martinez Report and Setting Deadlines for Dispositive Motions** (Doc. 20)* at 5.

[13]Plaintiff argues that the following genuine issues of material fact exist in this case: (1) whether Defendants took his money and took it without a hearing; (2) whether the prison system is a "joke" where a prisoner's rights are ignored; (3) whether Plaintiff has state law claims against Defendant Biamont; (4) whether the job descriptions of Defendants Luna, Biamont, Ulibarri, Burkhart, Romero and Sedillo were as stated by Plaintiff in his amended complaint; (5) whether Defendants were acting in the course and scope of their employment and under color of state law at all times relevant to Plaintiff's claims; (6) whether pages were already cut from the law book before it was checked out to Plaintiff and whether Defendant Luna checked the book for damage before she issued it to Plaintiff; (7) whether Plaintiff wrote to Defendant Biamont to request a copy of his prison account ledger and whether, and how, she responded; (8) what certain transactions show with regard to Plaintiff's prison account and whether Plaintiff received a statement for his account on October 6, 2005; (9) what the significance is of Plaintiff's signature on a form titled "Designated Staff Response to Inmate Request for Legal Assistance/Meeting;" (10) whether Defendant Luna added typed language to a prison form; (11) whether Defendant Ulibarri made no effort to put the $78.00 back in Plaintiff's account after Ulibarri

(continued...)

Plaintiff further argues that he was denied access to his prison account for a period of twenty-two months, until the $78.00 for the damaged law book was paid for from his account, and that compelling evidence shows that he did not damage the law book for which he was charged.[14]

### 1. Undisputed Facts

The following facts are undisputed in this case. Plaintiff received a misconduct report written on September 16, 2005, while incarcerated at the SNMCF.[15] This report charged Plaintiff with damaging state property, namely a law book with a replacement cost of $78.00, which had been checked out to Plaintiff from the prison library.[16] The law book was a volume of the United States Code Annotated, Title 42, Section 1983.[17] Although Plaintiff does not dispute that this book was

---

[13](...continued)
was given certain documentation; (12) whether the misconduct charge against Plaintiff related to the law book was dropped; (13) whether Defendant Burkhart was both a disciplinary and grievance officer; (14) whether Defendant Burkhart ignored Plaintiff's contentions that he did not damage the law book and that he had no hearing to determine if he damaged the law book; (15) whether Defendants Burkhart and Sedillo never interviewed Plaintiff, or sent anyone to interview him, to see if his grievance about the deduction from his prison account had merit; (16) whether Defendants Ulibarri and Sedillo are aware of a "due process" problem at SNMCF and of numerous complaints and grievances about the illegal taking of prisoner money; (17) whether Defendant Biamont promulgated an arbitrary rule; (18) whether Defendant Biamont owed Plaintiff duties of reasonable care, and protection from the harm of losing his money, both of which she breached; (19) whether Defendants Burkhart, Sedillo, Ulibarri and Romero owed Plaintiff a duty of reasonable care to protect him from harm which they breached; (20) whether Defendant Ulibarri had a duty to train and supervise Defendant Biamont and failed to exercise ordinary care in discharging that duty; (21) whether Defendants Ulibarri, Sedillo and Burkhart had actual and constructive notice of an unconstitutional practice and failed to act; (22) whether Defendant Romero had a duty to train and supervise Defendant Burkhart and failed to exercise ordinary care in discharging that duty; (23) whether Defendant Sedillo had a duty to train and supervise all other Defendants and failed to exercise ordinary care in discharging that duty; and (24) whether Defendant Burkhart had a duty to supervise and train Defendants Biamont and Luna and failed to exercise ordinary care in discharging that duty. *See **Response to Motion for Summary Judgment** (Doc. 31)* at 3-8.

[14]*Id.* at 8-9.

[15]*See **Amended Civil Complaint** (Doc. 5)* at ¶ 19; ***Martinez Report** (Doc. 25)* at 1 and Exhibit 2.

[16]*Id.*

[17]*See **Martinez Report** (Doc. 25),* Exhibit 2.

checked out to him, he denies damaging the book.[18]  When the law book was checked out to Plaintiff, he signed a form which describes the book and states, in part:

> If the Legal Material that is stated above is damaged or destroyed, the cost of replacing such Legal Material will be charged to your Inmate Account.  By signing below you acknowledge that you received the Legal Material stated above and will pay for any damages that occurred while it was checked out to your possession.[19]

A prison disciplinary officer conducted an investigation of the misconduct charge for the damaged book and found that a preponderance of the evidence warranted conducting a hearing on the charge.[20]  Plaintiff was advised of his right to a hearing on the charge and he elected to have a hearing.[21]  Plaintiff was transferred to the Central New Mexico Correctional Facility (hereinafter, CNMCF"), and the hearing on the misconduct charge was scheduled for October 6, 2005, at CNMCF.[22]  The hearing was never held.[23]  On September 23, 2005, the sum of $9.06 was debited from Plaintiff's "inmate regular spending" account to pay for the damaged law book.[24]  A transaction history for Plaintiff's account shows that two additional sums were debited

---

[18]See *Amended Civil Complaint* (*Doc. 5*) at ¶ 19.

[19]Exhibit 78-1, at page numbered 15 of Plaintiff's *Civil Complaint* (*Doc. 1*) in the Court's CM-ECF electronic docketing system.  Plaintiff contends that his signature on this form merely acknowledges his receipt of the book that was damaged - not his agreement to pay for damage to the book which he claims he did not cause.  *See Amended Civil Complaint* (*Doc. 5*) at ¶ 23.

[20]See *Amended Civil Complaint* (*Doc. 5*) at ¶ 20; *Martinez Report* (*Doc. 25*) at 1 and Exhibits 3 and 4.

[21]See *Martinez Report* (*Doc. 25*), Exhibits 3 and 4.

[22]See *Amended Civil Complaint* (*Doc. 5*) at ¶ 20; *Martinez Report* (*Doc. 25*), Exhibits 4 and 5.

[23]The record is unclear as to why the hearing was never held.  Plaintiff contends that no hearing was necessary due to the evidence he provided regarding the misconduct charge.  *See Amended Civil Complaint* (*Doc. 5*) at ¶ 27.  Plaintiff contends that the misconduct charge was dropped after a certain number of days because no hearing was held.  *Id.*  Defendants contend that the hearing was continued due to Plaintiff's transfer and that no documents or records show that Plaintiff or NMCD requested that the hearing be re-set.  *See Martinez Report* (*Doc. 25*) at 1-2.

[24]See *Martinez Report* (*Doc. 25*), Exhibit 6.

from the account to pay for the damaged law book: a debit of $20.00 on August 16, 2006, and a debit of $48.94 on July 11, 2007.[25] Thus, the total amount debited from Plaintiff's inmate regular spending account to pay for the damaged law book was $78.00. An annotation printed on a statement for Plaintiff's inmate regular spending account which is dated September 23, 2005 to October 18, 2005, states:

> 10/18/05 Your account is frozen for destruction of a legal book (Title 42 The Public Health and Welfare 1983). Your signature on the 'Designated Staff Response to Inmate Request for Legal Assistance/Meeting' form indicates that you acknowledge receipt of requested legal material and will pay for any damages to the legal material while it is in your possession. The replacement charge for the damaged book is $78.00. Since your account is frozen because of the damaged book, the $9.06 was applied to this debt leaving a balance due of $68.94. When this debt is paid, the freeze on your account will be removed. Paula Biamont, SNMCF Inmate Accounts.[26]

The records of Plaintiff's inmate regular spending account show that beginning with the initial debit to his account on September 23, 2005, all funds deposited in the account were used to pay for the damaged law book until the $78.00 was paid in full by the third debit from the account on July 11, 2007.[27] Thereafter, Plaintiff's inmate regular spending account was no longer "frozen" to pay for the damaged book.[28] On January 7, 2008, after this case was filed, the $78.00 debited

---

[25]*See **Martinez Report** (Doc. 25)*, Exhibit 8.

[26]***Martinez Report** (Doc. 25)*, Exhibit 6.

[27]*See **Martinez Report** (Doc. 25)*, Exhibits 6 and 8.

[28]*See **Martinez Report** (Doc. 25)*, Exhibit 8.

from Plaintiff's inmate regular spending account for the damaged law book was returned to his account by NMCD.[29]

Plaintiff filed a prison grievance, dated October 30, 2005, regarding the deduction of funds from his prison account without a hearing to pay for the damaged law book.[30] The grievance officer recommended that the grievance be denied because Plaintiff signed an agreement stating that any damages that occurred while legal material was checked out to him would be charged to his inmate account and this agreement did not state "that this would occur pending due process."[31] The prison warden denied Plaintiff's grievance and Plaintiff appealed.[32] Defendant Sedillo denied the appeal, concluding that Plaintiff was responsible for the damaged book because he signed an agreement in which he acknowledged receipt of the book that was damaged and agreed to pay for any damages that occurred to the book while it was checked out to his possession.[33]

## 2. *Injunctive Relief*

In the prayer for relief in his amended complaint, Plaintiff asks the Court to issue a permanent injunction ordering Defendants to return the $78.00 to his prison account.[34] It is undisputed that the $78.00 debited from Plaintiff's prison account for damaging the law book has been returned to his account. This fact makes Plaintiff's request for a permanent injunction ordering Defendants to return the $78.00 to his account moot, because Plaintiff has been given the relief that

---

[29] *See **Affidavit of Laura L. Valdez** (Doc. 25-2).*

[30] *See* Exhibit 78-4, at page numbered 18 of *Doc. 1* in the Court's CM-ECF electronic docketing system.

[31] *See* Exhibit 78-5, at page numbered 19 of *Doc. 1* in the Court's CM-ECF electronic docketing system.

[32] *Id.*

[33] *See* Exhibit 78-3, at page numbered 17 of *Doc. 1* in the Court's CM-ECF electronic docketing system.

[34] *See **Amended Civil Complaint** (Doc. 5)* at ¶ 59(B)(1).

he seeks. Because the Court can no longer grant any effective relief to Plaintiff, with regard to the return of $78.00 to his prison account, his request for a permanent injunction in this regard is moot. *See Woodberry v. Bruce*, No. 05-3291, 2006 WL 2879046, 203 Fed. App'x. 186, 189 (10th Cir. Oct. 11, 2006) (unpublished) ("A controversy becomes moot when a court can no longer grant any effective relief."), citing *Osborn v. Durant Bank & Trust Co. (In re Osborn)*, 24 F.3d 1199, 1203 (10th Cir. 1994). Therefore, the undersigned recommends that Defendants' motion for summary judgment be granted with regard to Plaintiff's claim for permanent injunctive relief ordering the return of $78.00 to his prison account.

Additionally, in his prayer for relief, Plaintiff asks the Court to issue a permanent injunction ordering Defendants to: (1) develop what he describes as "judicial scrutiny;" (2) properly "investigate" the validity of an unspecified grievance and take what he describes as "proper action to correct problems when it is obvious that [a] constitutional violation has occurred;" (3) "never" take money from a prisoner's account without a hearing; and (4) order "subordinates (such as Defendant Luna)" to not change what he describes as "CD-Policy forms."[35] The Court finds these requests for a permanent injunction to be too vague and conclusory to establish a basis for equitable relief. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (liberal construction of *pro se* plaintiff's complaint "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based.") (internal quotation marks and citation omitted). Moreover, these requests are too vague for the Court to fashion an injunction with the degree of specificity required by the Federal Rules of Civil Procedure. "Every order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms *specifically*; and (C) describe *in*

---

[35]*Amended Civil Complaint* (*Doc. 5*) at ¶ 59(B)(2)-(5).

*reasonable detail* – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d) (emphasis added). Therefore, the undersigned recommends that these claims for permanent injunctive relief be dismissed *sua sponte*, under 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6), for failure to state a claim on which relief can be granted.

### *3. Declaratory Relief*

Plaintiff also seeks declaratory relief, pursuant to 28 U.S.C. § 2201, declaring "that the acts and omissions described [in his amended complaint] violated [his] rights under the constitutions and laws of the United States and the state of New Mexico."[36] Plaintiff's claim for declaratory relief is not moot. Although a claim for "declaratory judgment is generally prospective relief," it is treated as retrospective "to the extent that it is intertwined with a claim for monetary damages that requires [the court] to declare whether a past constitutional violation occurred." *PETA v. Rasmussen*, 298 F.3d 1198, 1202, n.2 (10th Cir. 2002); *Faustin v. City and County of Denver, Colorado*, 268 F.3d 942, 948 (10th Cir. 2001). Plaintiff claims that his federal and state constitutional rights to due process were violated by the debit of money from his prison account without a pre-deprivation hearing, and Plaintiff seeks damages for that occurrence. Thus, a live controversy remains and Plaintiff's claim for declaratory relief is not moot. Therefore, the undersigned recommends that Defendants' motion for summary judgment be denied with regard to Plaintiff's claim for declaratory relief.

---

[36]*Id.* at ¶¶ 6, 59.A.

*4. Compensatory and Punitive Damages*

In his amended complaint, Plaintiff seeks an award of compensatory damages, although he fails to specify the exact nature of the damages he seeks.[37] To the extent Plaintiff seeks monetary damages of $78.00, as compensation for the total amount debited from his prison account to pay for the damaged lawbook, this claim is moot because the $78.00 has been returned to his prison account. As for other compensatory damages, and Plaintiff's claim for punitive damages, Defendants have made no showing that these claims were mooted by Defendants' return of $78.00 to Plaintiff's prison account. Therefore, the undersigned recommends that Defendants' motion for summary judgment be granted with regard to any claim by Plaintiff for compensatory damages for the $78.00 debited from his prison account to pay for the damaged book, but denied as to any other compensatory damage or punitive damage claims.

## *Conclusion*

Defendants' *Motion for Summary Judgment* (*Doc. 26*) should be **GRANTED** in part and **DENIED** in part. It should be granted with regard to Plaintiff's claim for a permanent injunction to return the $78.00 debited from his prison account to that account and also with regard to any claim by Plaintiff for compensatory damages for the $78.00 debited from his prison account. These claims are moot. Plaintiff's other claims for permanent injunctive relief should be dismissed sua sponte, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6), for failure to state a claim on which relief can be granted. Defendants' motion for summary judgment should be denied with regard to Plaintiff's other remaining claims.

---

[37]*Id.* at ¶ 59(C). Plaintiff's response to the Martinez report suggests that he seeks an award of interest on the $78.00 debited from his account for the loss of use of those funds. *See* **Response to Martinez Report** (*Doc. 30*) at 3.

## RECOMMENDED DISPOSITION

For the foregoing reasons, the undersigned recommends that the Court **GRANT** Defendants' *Motion for Summary Judgment* (*Doc. 26*) with regard to Plaintiff's claim for permanent injunctive relief to return the $78.00 debited from his prison account to pay for the damaged law book, and also with regard to any compensatory damage claim by Plaintiff for the $78.00 debited from his account. Additionally, the undersigned recommends that Plaintiff's other claims for permanent injunctive relief be dismissed *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6), for failure to state a claim on which relief can be granted. As to all other remaining claims, the undersigned recommends that Defendants' motion be denied.

*Lourdes A. Martínez*
**HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**